UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                CRIMINAL NO. 17-20632

v.                              Hon. STEPHEN J. MURPHY

D-6 ERIC ROBINSON

        Defendant.

_____/

## **<u>Government's Sentencing Memorandum</u>**

Because of Robinson and his coconspirators, over a hundred young girls suffer from mental anguish and trauma. Several have attempted suicide, many have mutilated their own bodies because of their pain, and many more are in therapy. For this conduct, but taking into account ███████████████████ history and characteristics, the Government recommends a sentence of **40 years**' imprisonment followed by **10 years** of supervised release. Robinson's guidelines are life imprisonment.

## I. Factual Background

Robinson was a part of two different groups.  Both had the same goal – to "hunt" minor females, entice them to masturbate and engage in other sexual activity on web camera, and then record and share it.  The first of these groups started in 2012.  Robinson and eight to ten other individuals worked together for a little over a year, pretending to be teenage boys, and successfully enticing dozens of girls.   Then, in late 2013 or early 2014, Robinson joined the Skype Group.  This new group was active from 2013 through at least April of 2017.  They primarily organized their activities and strategized about how to effectively target minors in a private group conversation on Skype.  The FBI recovered numerous of the group's discussion threads.  The first of the recovered threads ran from at least January 2015 through January 2016 and was entitled "make girl happy n horny = pussy ;)."  Others included "Chat," "Club Cameltoe," and "Group V2.0."  *See, e.g.,* Govt. Ex. B, Examples of Group Chat Discussions, Filed Under Seal.

Both of Robinson's groups lured girls to an unmonitored website, primarily devoted to the production of child pornography (hereinafter "Website A"), in order to entice them to engage in sexual activity.  The

Skype Group also created their own website to entice minors (hereinafter "Website B") which was extremely similar to Website A but with a few "added features."

Both Website A and Website B were chatroom-based social media platforms where people, using usernames of their choosing, went to different chatrooms and communicated with other users in real time. Unlike other moderated websites, there was no central list of chatrooms on Website A and Website B.  Users had to know the specific chatroom they wanted to go to in advance or else receive a link to that chatroom, and any person could create a chatroom and then invite others to join. Each chatroom had a list of users in the lower right corner of the screen, an active chat conversation on the lower left corner of the screen, and a large space above for individuals to live stream their activities via web camera.  At any given time, up to two users could broadcast their activities via web camera.  Robinson primarily used the username **SPENCER** on Website A and B when he was working with the Skype Group.  Below is a still image from a longer video depicting him and other group members enticing MV-8 to engage in sexual activity on Website A. MV-8 complies with their directions in the video, masturbating with

various objects, including her mother's electric toothbrush.  *See also*, Govt. Ex. C, Website A Group Enticement Examples, Filed Under Seal.



The usernames of the other members of the Skype Group who have been identified by the FBI and who reside in the United States include: **SHELDON, COLBY (aka MUDD), JOEY, JOSH (aka JUSTIN),** and **CHRIS.**

Each group member had at least one role, although at times a group member would play more than one role or switch from one role to another. For example, the group had "hunters", "talkers," and "loopers." The "hunters" visited social media websites commonly used by the minor victims to interact with the minors. They were in charge of convincing the girls to log-on to Website A or Website B. They provided the girls with links to specific chatrooms that they or another group member would create. They then told the other group members (most often in the Skype Group discussion thread) that they had gotten the girl to come to Website A or Website B and provided the link to the other group members so they could join the room and see the new girl.

One Website A user described "hunting" this way:

> A hunter chooses a website called – you can call it hunting ground if you want . . . they choose a website. They go there . . . Low viewer counts are always ways to avoid competition with other groups. And it can also be used as a tool for enticement and coercion. Because if you're broadcasting, you want people to talk and interact with. If they're not there, well, that's a tool. Come over here. There's people over here ready to talk to you. And minor females, for the most part, want people to talk to and some sort of attention based on what I've seen . . . a hunter's primary job was procuring targets and minor female victims for sexual exploitation and redirecting them to a specific location created by the hunter.

██████████████████████████████████

Once the minors logged-on, the "talkers" took over the primary job of conversing with them. They asked the minors to do "dares" which escalated into sexual activity. One Website A user explained that the talkers' job was to "make the victims feel wanted . . . to slowly, through words and coercion and enticement try and get them [] moving towards committing acts of sexual nature." (*Id.* at 404). One Skype Group member told the FBI that many of the minors they targeted engaged in self-mutilation by cutting themselves. If a girl said she was suicidal, it was a group rule to engage in "normal conversation" with her for two to three days before again asking her to engage in sexual activity. In this way, they would build the minor target's trust, so that she would be more likely to comply with their directions in the future.

If the "talkers" were unsuccessful, then the "loopers" would play a previously recorded video of a minor actively chatting and performing sexual acts in a chatroom. The "looper" pretended to be the minor in the video. The "looper" played the video or "loop" of a minor engaged in sexual activity in order to entice the minor in the chatroom to engage in the same sexually explicit activity. According to one Website A user, the

looper's first task was to "convince[] the girl that the loop is real . . . and there are ways to do that. Most of the younger females are ignorant of how live people really act all the time . . . and that's where the talkers come in. They keep constantly redirecting her thought process in certain ways in order for her to take the loop for granted. Most of the younger females . . . they're not as tech savvy as the more older ones." (*Id.* at 404-05).

Robinson and the other group members would record the girls they enticed engaging in the lascivious display of the genitals, masturbation, and other sexual acts. They had a file-sharing system that was password protected for any group member who missed the so-called "win" on a particular night. Website B even had an auto-recording system, so that the group members had recordings of every single minor who went on camera at their fingertips. They dubbed their recordings of the preteen and teenage girls "captures." They identified their age by using a "minus" symbol from 18; so an 11 year old would be "-7," a 13 year old "-5," and a 15 year old "-3."

The group's target age range was 13-17 year-old girls. They kept a list of links to the current chatrooms where they were targeting minors

in their Skype Group discussion thread and updated it regularly. The group even had their own "rules." These were detailed in a txt document entitled "FIGHT CLUB." *See* Govt. Ex. E, Rules of the Group, Filed Under Seal. Taking a girl "private" or one-on-one, as opposed to allowing the group to enjoy her, was strictly prohibited. Also prohibited was talking to a girl if you joined the room late in the game – group members were required to either stay quiet if they joined when a girl was about to engage in sexual activity or else leave the room so as not to interfere with the other members' work.

So far, the FBI has identified 48 victims of the Skype Group and approximately a dozen victims of the first group Robinson participated in. There are over a hundred more who remain unidentified. *See* Govt. Ex. A, Victim Information, Filed Under Seal.

## A.    Robinson's Chat Conversations

Robinson was an active participant in the private Skype Group discussion threads. In the "Club Cameltoe" chat alone, he wrote more than 1300 comments. His participation spanned multiple years. In the chats, amongst other things, he shared videos of children being exploited, celebrated the fact that the group had enticed a 14-year old girl to engage

in bestiality, offered to share recordings he personally made "with sound" of a little girl being exploited, and lamented that he did not have naked photographs of his 15-year old daughter's friends.  *See, e.g.,* Govt. Ex. B, Examples of Robinson's Skype Group Chat Conversations, Filed Under Seal.  In one chat dated April 21, 2016, he and fellow group members discussed then 14-year old MV-8 – they later joked about MV-8's "suicide drama":[1]

| Davidson:[2] | could also tell her maybe the dog would actually be interested if she shaved |
| Davidson: | :w: |
| **Robinson:** | yep peanut butter and pubes are a bad combo |
| GM: | now there's some good moaning without video in the |

---

[1] These chats, along with some of the descriptions of the videos of child pornography the group produced, are extremely graphic.  Without actually attaching the videos or images as exhibits, and in fairness to the victims, the Government provides these chats and descriptions in an attempt to accurately convey their contents.  *See United States v. Cunningham*, 680 F.Supp.2d 844, 847 (N.D. Ohio, 2010), *affirmed* 669 F.3d 723 (6th Cir. 2012) (criticizing the "sterilization" that takes place once child pornography enters the legal system and the "clinical" way in which images are frequently described).

[2]  Names are included for identified group members who have been charged either in a criminal complaint or an indictment.  The names of group members who have not yet been identified are not included here (and instead replaced with [GM] to protect the integrity of the ongoing investigation.  Unidentified girls who are believed to be minors' names are replaced with MV.  The chats above are excerpts from Skype or from video chats that have been transcribed.

|           | background                                          |
|-----------|-----------------------------------------------------|
| **Robinson:** | nice… i can see her saying "fuck me" can you hear it? |
| GM:       | lol yes                                             |
| **Robinson:** | nice (y)                                         |
| **Robinson:** | fuck i gtg back to work                         |

Robinson was primarily a "talker" for the group. He engaged in extremely vulgar and sexually explicit conversations with teenage girls in order to get them to masturbate with electric toothbrushes, curling irons, and hairbrushes and to encourage them to insert other objects. For example, in early 2016, Robinson and others enticed MV-8 to insert eggs and ice cubes into her vagina. A short excerpt from the nearly 30-minute recording is below:

| Kovac:    | yummy                          |
|-----------|--------------------------------|
| **Robinson**: | lucky egg                  |
| GM 1:     | mmm fuck                       |
| Massey:   | oh my                          |
| Kovac:    | i want to stick my tongue in there |

GM 2:                mmmm

Massey:           damn that's hot

Dominguez:      so damn nice

**Robinson**:       best tasting eggs ever i bet

GM 1:                mmm

Kovac:            i want to hunt for it

GM 2:                mmm omg

Massey:           fuck this is a great easter

Dominguez:      mv-8 a cucumber can be use as a dildo, i mean ifou ha[cut off]

Dominguez:      [tongue out emoji]

Massey:           love it

**Robinson**:       mmm

MV-8:               again?

MV-8:               no im allergic to them

Massey:           sure once more

Dominguez:      oh i didn't know that

MV-8:               its okay

**Robinson**:       damn that pussy looks so good

Some of Robinson's comments during the remainder of the conversation include, "that pussy looks amazing," "sexy MV-8," "that was so hot," and "i bet you can cum again ;)."  MV-8 complies with the group's directions throughout the video.

In another conversation, around the same time frame, Robinson directs MV-8 to get a toothbrush and then a hairbrush.

**ROBINSON**:     that pussy is so perfect

**ROBINSON**:     mmm

Massey:          fuck me that's so hot

GM 3:            that pussy need a nice fingers fuck [tongue out emoji]

**ROBINSON**:     omg

Massey:          can imaging pinning her knees against her chest and

                 sliding [cut off?]

**ROBINSON**:     toothbrush?

**ROBINSON**:     mmm

Massey:          mmmm

**ROBINSON**:     damn

Massey:          make it wet

Massey:          must feel great

Massey:          just like my finger

GM 3:            mmhmm

**ROBINSON**:     i wish i was that toothbrush

**ROBINSON**:    you need something bigger mv-8

**ROBINSON**:    like ur brush

GM 2:            mhm that ribbed brush

Massey:           perfect clit

Massey:          am so hard now

Massey:          yummy

GM 3:            rub that clit


## B.  Forensic Examination Results

From April 1, 2015 through June of 2016, Robinson logged into Website A over 2,600 times.  During this time, he was also downloading and sharing child pornography using a peer-to-peer file sharing program. On June 30, 2016, the Internet Crimes Against Children Task Force (ICAC), unaware of Robinson's involvement in the Skype Group, executed a search warrant (based on Robinson's activity in the peer-to-peer network) at Robinson's residence in Duluth, Minnesota.  Robinson's

devices were seized for forensic examination.  Undeterred, Robinson *logged back onto Website A* several times from his computer at work.  In August of 2017, Robinson was arrested and transported to the Eastern District of Michigan after the FBI investigation revealed his membership in the Skype Group.  Robinson's devices, including two Toshiba satellite computers, an Acer Aspire desktop, a Seagate 500 GB external hard drive, and multiple thumb drives, were transferred to the FBI.

As of the date of this memorandum, the FBI has only been able to analyze approximately 18.2 percent of the content on Robinson's devices because of the vast quantity of data they contain.  The partial forensic examination of Robinson's devices has so far revealed 28,700 child exploitive images and videos, over 3,900 child pornography images and approximately 2,700 child pornography videos.  The child pornography videos dated back to September 2013.  The longest child pornography video was 2 hours and 21 minutes; the total length of his child pornography video collection spanned more than 666 hours.  Robinson recorded multiple child pornography videos of numerous victims from Website A and Website B.  To give just a few examples, he recorded 88 child pornography videos of MV-8 and another eight that were child

exploitive.  He recorded 79 of MV-20 and 125 that were child exploitive. He recorded 35 child pornography videos of MV-21 and 57 that were child exploitive.[3]  And, he recorded 8 of MV-46 and 338 additional files that were child exploitive.  Along with the child pornography videos, Robinson recorded these young girls doing things like rubbing or showing their breasts, hanging out with friends, and napping.  Below is a chart detailing the combined number of child pornography and child exploitive videos Robinson recorded of just a handful of the victims from Website A and Website B.[4]

| MV-3 | 11 |
|------|----|
| MV-4 | 27 |
| MV-5 | 14 |
| MV-6 | 21 |
| MV-7 | 23 |
| MV-8 | 96 |
| MV-9 | 15 |

---

[3]  MV-8 was 14 when she was first victimized by the group; MV-20 was 13; MV-21 was 15.
[4]  Given the number of victims, the FBI has not yet bookmarked files for each and every identified victim and has not done so for most of the unidentified victims.

| MV-10 | 14 |
|-------|-----|
| MV-18 | 58 |
| MV-20 | 204 |
| MV-21 | 92 |
| MV-17 | 10 |
| MV-18 | 62 |
| MV-20 | 298 |
| MV-21 | 250 |
| MV-44 | 90 |
| MV-45 | 92 |
| MV-46 | 346 |

Some of the ways Robinson entitled the videos he made include: "[Minor's Name] lotion," "brush bate," "[Minor's Name] shower," "[Minor's Name] bottom," and "[Minor's Name] boobs." Robinson recorded numerous videos containing particularly disturbing and graphic content. For example:

- **Video of Brown Haired Minor Female:** This video, which is more than 30 minutes long, depicts a young brown-haired girl with

glasses in a pink shirt and pink-striped pajamas undressing and then masturbating with her fingers.

- **Video of MV-8:** This video, which is approximately thirty minutes long, depicts 14-year old MV-8 with clothespins on her breasts. She has purple bracelets on her wrist and curly, blondish brown hair. She masturbates by inserting a brush handle and a toothbrush into her vagina, then looks at the computer screen apparently for direction, and licks her fingers.

Robinson's recordings are dated all the way up to the day before the search warrant.

## II.  ADVISORY SENTENCING GUIDELINES

The Guidelines in this case are not in dispute. The parties agree that Robinson is a criminal history category I with an offense level 43, resulting in a Guideline range of life imprisonment.

## III.  SENTENCING FACTORS, TITLE 18 U.S.C. § 3553

Congress has provided, through 18 U.S.C. § 3553(a), the relevant objectives and factors to be considered by sentencing courts in imposing a "sentence sufficient, but not greater than necessary."  Those objectives are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, incapacitation, and rehabilitation); (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need for restitution.

The most relevant factors are evaluated below, beginning with number 4, the sentencing guidelines.

## A.    **The Advisory Guideline Range**

In *United States v. Rita*, 551 U.S. 338 (2007), the Supreme Court restated that the goals of the United States Sentencing Commission in formulating the Sentencing Guidelines are to carry out the objectives of 18 U.S.C. § 3553(a). Despite their being advisory, rather than mandatory,

the Guidelines remain an important factor in fashioning a just sentence. As the Supreme Court stated in *Rita*, "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Id.* at 345.

In *United States v. Vonner*, 516 F.3d 382, 389 (6th Cir. 2008), the Court in analyzing the holding in *Rita*, recognized that the guidelines represent the Sentencing Commission's attempt to reconcile the factors under § 3553(a), that these factors seek to balance Congress' competing interests in consistency and that a confluence between the national views of the sentencing commission and the independent views of a sentencing judge results in a "double determination" which significantly increases the likelihood that a sentence is reasonable.

In *United States v. Gall*, 128 S.Ct. 586, 601 (2007), the United States Supreme Court provided a template for sentencing proceedings in the district court.  The Court held that a district court should begin sentencing proceedings by correctly calculating the applicable guidelines. *Gall*, 128 S.Ct. at 596.

**B.    The 3553(a) Factors as Applied in This Case**

There are no sentencing guideline disputes.  The parties agree that the appropriate guideline range is life imprisonment.  The Government has carefully considered the sentencing factors and the need to avoid unwarranted sentencing disparities in recommending a downward variance and a **40-year** sentence followed by 10 years of supervised release for Robinson.

### 1.  Nature and Circumstances of the Offense

The nature and circumstances of the offense warrant the Government's requested **40-year** sentence.  Robinson participated in two different groups of individuals that had the sole objective of convincing minor females to engage in sexual activity on web camera so that they could record them and exploit them.  He was very active in both groups and, as evidenced by the forensic examination and his chats on Skype, he started producing child pornography at least as early as 2013 and continued all the way up until the day before the search warrant at his residence.  Moreover, even after ICAC executed a search warrant at Robinson's residence, Robinson *continued* to log-on to Website A from work.

In just a little over one year, the FBI calculated 2,600 logins for Robinson to Website A – approximately 7 logins each day. And, not only was Robinson logging on to Website A and Website B to produce child pornography; he was also receiving it and distributing using peer-to-peer networks. For Robinson, this was more than just a hobby; it was his passion. He tricked and deceived numerous minors into thinking he was a teenager so he could get "win" for himself and for the group. He said extremely vulgar things to these young 13, 14, and 15 year-old girls. ("i wanna lick that pussy . . . curling iron? . . . i would tongue fuck that so deep … i wish i could ram my hard dick in that pussy").

Robinson's conversations in the Skype Group chat show the extent of his depravity. ("im still waiting to realize the benefits of my 15 yr old daughter accidentally uploading nudes of her friends to icloud"; "mom dancing around holding a baby . . . while her 8 yr old daughter shows cleaveage online lol"; "yep peanut butter and pubes are a bad combo"; "nice, i can see her saying 'fuck me' can you hear it?").

He continued to prey on these girls despite knowing how vulnerable they were. For example, Robinson recorded over 80 videos of MV-8, who the group described as having "suicidal drama," including videos

depicting her masturbating with a toothbrush, a plastic egg, ice cubes, and engaging in sexual activity with a pet dog (all at the group's request). Yet another thing that makes this case so much more egregious is that the production videos each of the group members created were frequently 20, 30, 40, 50 minutes long.  The humiliation and fear is so much greater than if these were snapshots or two or three minute videos, as we so frequently see in production cases.  Along with the sexual activity, these offenders recorded their entire room, their pets, them showering, and the posters on their wall.  And, they recorded most of them countless times. These girls and their families have no idea who possesses those videos, which websites they are posted on, and where they will be distributed in the future.

Robinson's collection involved particularly lengthy videos (with a total length spanning more than *600 hours*).  He created recordings of girls showering and engaged in bestiality, and he was a part of the "team" that enticed these girls to do all of those things.  He titled these videos in ways that show his attitude and intent: e.g., ""MV lotion," "brush bate," "MV shower," and "MV boobs."  The horrifying nature of the videos cannot

be overstated.  Watching even a few seconds of them is sickening and heart breaking.

Robinson alone produced thousands of videos of minor females.  As a result of his and other group member's actions, a whole new set of "products" were created for a vile marketplace.  These videos and those of other group members' will likely be the subject of hundreds of future receipt, distribution, and possession cases. Because of Robinson's actions, dozens of parents and minors have already started serving a life sentence, a sentence that involves them receiving National Center for Exploited and Missing Children (NCMEC) notices each and every time their images or videos are discovered on another offender's computer – a sentence that will leave them wondering at every job interview, with every college application, in every relationship they have, whether the persons they are interacting with have seen images of them in their most vulnerable state.

For this conduct, Robinson deserves a life sentence, and for many of his co-conspirators (both those in the Skype Group who have not yet been indicted and those in other groups that have been convicted but not

yet sentenced),[5] the Government will likely be asking for guideline range sentences of life imprisonment.  However, the Government has carefully evaluated each defendant's level of culpability and numerous other factors in fashioning sentencing recommendations.   his genuine remorse about his conduct distinguishes him from his fellow coconspirators.  Therefore, the Government is requesting a downward variance and a sentence of **40 years.**[6]

---

[5]  One of these other groups of individuals is before this Court – eight defendants will be sentenced in November in the Crim No. 18-20128 case.  In addition, there are several other defendants that were part of the Skype Group that the Government has charged in criminal complaints, including William Brooks Davidson (**CHASE**) and Aaron Wright (**NERV**) that will be sentenced before this Court if convicted.

[6] In considering sentencing disparities, the issue is the length of the sentence, not the age the defendant will be when he is released.  It would be unfair to punish someone *less* simply because it took law enforcement a longer time to catch them.  The defendant should not be rewarded for successfully committing this crime for a longer period of time and avoiding detection.  In fact, quite the opposite.

| Defendant | CP Files | Activity | Sentence |
|---|---|---|---|
| Terry Kovac | 3,129 and 48,392 child exploitive so far (only 6.7 % of forensics complete) | • On Website A almost daily up to the date of the search warrant<br>• Also on Website B<br>• In two different groups<br>• Exploited minors for at least 6 years on Website A<br>• Talker and looper<br>• Interested in minors under the age of 10 and masturbates twice a week to minors on Website A | 50 years |
| Felipe Dominguez-Meija | 9,479 and 15,735 child exploitive so far (only 5.5 % of forensics complete) | • On Website A almost daily all the way up to the date of the search warrant<br>• Active on Website B<br>• One of the most aggressive talkers and very active in the Skype Group chat<br>• Actively exploiting girls for at least 5 years | 40 years |
| Noel Eisley | 2,730 and 9,527 child exploitive so far (only 4.5 % of forensics complete) | • On Website B regularly – stopped frequenting the group in early 2016 but continued to target minors one-on-one<br>• On Website A regularly starting at least as early as 2012 and through early 2016<br>• Actively exploiting children for more than four years<br>• In two different groups<br>• Talker | 40 years |
| Bret Massey | 7,635 and 15,747 child exploitive | • On Website A on a near daily basis for two to three years<br>• Also active on Website B for short period of time<br>• One of the more aggressive talkers in the group and very active in the Skype Group chat; also had a loop that he occasionally used | 35 years |

| William Phillips | 1,803 and 5,908 child exploitive | • On Website A on a near daily basis for five + years up through the date of the SW (laptop active on Website A during SW execution)<br>• In two different groups<br>• Looper, hunter, and talker<br>• Very active on Skype with co-conspirators<br>• At least one identified minor in EDMI believed he was her boyfriend and he carried on a relationship with her resulting in significant trauma | 30 years |
| Eric Robinson | 6,647 and 28,700 child exploitive so far (only 18.2 % complete) | • On Website A on a regular basis from 2012 up through the summer of 2016 when a search warrant was executed at his residence<br>• In two different groups<br>• Active on Website B and the Skype Group chat<br>• Talker and looper | 40 years |

## 2.    History and Characteristics of the Defendant, 18 U.S.C. § 3553(a)(1).

Nothing about Robinson's history and characteristics suggests that a sentence of **40 years imprisonment** is unwarranted.  Robinson had a stable childhood, although his father struggled with alcoholism.  PSR ¶ 65.  He was well-liked in school, is educated, and is in good health.  PSR ¶¶ 64-71.  The Government does not dispute that Robinson, as opposed to other offenders, is genuinely remorseful for his conduct.   The Government has taken that into account in recommending a downward

variance.  However, importantly, Robinson only made efforts to reform after the search warrant was executed at his residence.  Moreover, he continued to visit Website A from work after even after law enforcement confronted him about his addiction to child pornography.

### 3. The Sentence Imposed Must Reflect the Seriousness of the Offense, Promote Respect for the Law and Provide Just Punishment, 18 U.S.C. §3553(a)(2)(A)

The offense of child exploitation enterprise is incredibly serious. And, the ways that Robinson and other group members violated the statute, by producing child pornography of hundreds of minor females over the course of several years, are particularly egregious.  Each count of production carries a 15-year minimum, and each count of exploitation of a minor carries a 10-year minimum and a maximum of life imprisonment.

This group's conduct is so overwhelmingly horrific that it is hard for the brain to even quantify it.  There are over a hundred victims, some who have supportive parents, some who may not, and most whose parents still don't know what occurred and can't help them.  The group

members continued to target girls even after they learned that were anorexic, cutting themselves, and suicidal.

Some of these victims were targeted on a weekly or daily basis by the group. For example, the group convinced MV-8 to masturbate with numerous objects on a weekly basis for more than a year. Several of these girls carried on relationships with Website A users, believing they were dating them and calling them their boyfriends. Their "boyfriends" continually asked them for sexual videos and images, which they provided in order to keep the relationship going. For some, the sudden, unexplained end to the relationship when their "boyfriend" lost interest was devastating. It led them to spiral into a deep depression and seek mental health treatment.

This group has normalized sexual behavior that is completely abnormal. They have robbed these young minor females, as young as ten-years old, of their innocence. They have taught them that they are only special and will only get attention and "fit in" with others their age if they are willing to let others exploit their bodies. For those that have been identified, hopefully their parents are able to help bring healing and restore them day by day. But, for those that are not identified, there is

no telling what damage Robinson's group has done, and whether they will ever be able to live productive, healthy lives.

### 4. The Sentence Imposed Must Afford Adequate Deterrence to Criminal Conduct and Protect the Public from Further Crimes of the Defendant, 18 U.S.C. §3553(a)(2)(B) and (C)

Unfortunately, this group's crimes are all too easy for others to commit. Because the Internet allows users to maintain anonymity, an offender need only have recording software and knowledge of an unmonitored website to do what this group did. The recording software that the majority of them used is free and can be downloaded by anyone with a click of a button. Moreover, as this group's conduct demonstrates, it has become increasingly easy for groups like this to *create their own* websites (like Website B) to target minors and simply move from website to website as law enforcement shuts them down. Thus, deterrence in these types of cases is of incredible importance. Potential offenders who think about doing what this group did, which has left permanent scars on so many young girls' and families' lives, should know that, if they are caught, they will likely spend the rest of their lives in prison.

Most importantly, a **40-year** sentence is necessary to protect the public. According to a 2013 report from the Centers for Disease Control,

suicide is the third leading cause of death for children age 10 to 14 years old, and the second leading cause of death for children age 15 to 24. [7]  A July 27, 2016 assessment by the FBI concluded that "it is very likely child sextortion victims are attempting suicide or engaging in other self-harming behavior due to their sextortion victimization," with "very likely" meaning 80-95 percent.  *Id.*  According to the assessment, "the prevailing hypothesis continues to be sextortion is a major, if not the underlying, factor for child victims taking their lives in these scenarios." *Id.*

Unfortunately, these statistics have certainly rung true in this case, with several of the victims attempting suicide.  Because the victims live all across the United States (and in other countries), the Government is not aware of every incident that has occurred.  However, what we do know is frightening enough.  For example, MV-11, victimized by the group at the age of 13 or 14, attempted suicide soon after authorities got in touch with her parents about Website A.  She was rushed to the emergency room and was admitted for psychiatric care.  MV-11's parents

---

[7] *Children Committing Suicide or Engaging in Other Self-Harm due to Sextortion Victimization*, FBI Criminal Investigative Division, (July 27, 2016).

then enrolled her in a three-month intensive program in Utah, at a total cost to them of 60,000 dollars.  Her forensic interview was scheduled but has been indefinitely delayed because of the trauma she has endured.

The parents of MV-53 (who was 16 at the time of the offense) report that she attempted suicide and was hospitalized two times in 2017; the second time, she drank half a bottle of Benadryl.  She has been cutting herself and also physically hurting herself by slamming her head against the wall.  (*See* Govt. Ex. A-53, Victim Information, Filed Under Seal). Her parents have been trying to find money to get a permanent therapy dog for MV-53.  MV-52 (who was 15) reported that people on Website A blackmailed her, telling her that if she did not perform certain sexual acts, such as spreading her "ass," "finger[ing] her pussy," and "shaving" around her vagina, they would spread her picture all over the Internet. When she stopped doing what they asked, someone on the website reached out to her and explained that he knew her address and was in her city and coming to visit her.  When she told them her mom was with her, the individual said he was going back home.  (*See* Govt. Ex. A-52, Victim Information, Filed Under Seal).

MV-50 (who was 16) struggles with cutting, is in therapy, and is on medication for depression.  MV-54 (who was 12) now has a post-traumatic stress disorder diagnosis, is on medication and in counseling, and was recently sexually assaulted.  MV-55 (who was 13 or 14) was blackmailed by a Website A user.  The user made her write "slut" on her forehead with lipstick, told her he knew what high school she was going to and that he was going to move there, found her Facebook profile, and found out who her parents were and threatened to send them sexually explicit photographs if she did not keep doing what he asked.

Multiple families reported that this incident left them ripped apart.  MV-4 and her mother are completely unable to talk about it, to the point where MV-4's father requested that all notifications go directly to them so that they don't have to see them.  (*See* Govt. Ex. A-4, Victim Information, Filed Under Seal).  Other parents are struggling in their marriages or have had to move out of their homes.  Some report living in constant fear that these Internet predators will come after their daughter.

So many of the victims in this case will never be free because of what Robinson and others did to them.  *See* Govt. Ex. A, Victim Information, Filed Under Seal.

**5.    The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct 18 U.S.C. §3553(A)(6).**

Child exploitation enterprise is the most serious child exploitation charge a defendant can be charged with.  A sentence of **40 years** would be appropriate and not result in any unwarranted sentencing disparities in a typical production case involving several victims.  Here, this group's conduct is at an entirely different level, and Robinson personally produced thousands of videos of child pornography, many of them over 30 minutes in length.  Robinson imposed what amounts to a life sentence on hundreds of minor females who he actively exploited for several years.  A sentence of **40 years** will not result in any unwarranted sentencing disparities.

**6**.    **Restitution Stipulation**

The parties stipulated to a restitution amount of $5,000 per identified victim of the offense.  The parties have prepared a restitution stipulation for the 48 identified victims.  The money shall be paid by the

Defendant to the Clerk's Office, who will then make payments to the parents of the victims or the victims (if they are 18 at the time of sentencing).

### 7.    Victim Impact Statements

Well over a dozen parents and minors who were harmed because of the Defendants' conduct have submitted letters to the Court.  *See* Govt. Ex. A, Victim Information, Filed Under Seal.  Still more parents and victims will address the Court at sentencing.  MV-1 wrote that she is "humiliated" and "mortified" that she was tricked into engaging in this conduct.  "My work in school has lost its quality, my life at home felt like hell from day to day in high school, my friends turned into foes, and I lost my spirit to live a happy life." (*See* Govt. Ex. A-1, Victim Information, Filed Under Seal).  MV-66 explained that during her period of victimization, she suffered from anxiety and depression.  She turned to the internet so she could be herself.  But the Skype Group awaited her.  Since learning that recordings were made of the sexual activity she engaged in, MV-66 explained her feelings this way: "It has been tearing me to pieces just wanting to know who's seen them and how much they were spread.  I've been just disgusted with myself and haven't been

motivated to do anything." "This case will be on my mind till the day I die." (*See* Govt. Ex. A-66, Victim Information, Filed Under Seal).

MV-27's parents described how their daughter's grades fell, she lost weight, and did not make friends at school. MV-27 now sees a therapist and takes medication, but that medication "comes with a price. She has no real emotions anymore or any real heartfelt expressions coming out." (*See* Govt. Ex. A-27, Victim Information). MV-8 and MV-15 are sisters. Their mother wrote a letter to the Court. MV-8 "spent a long time crying every night... her sleep declined... we now see a counselor regularly." MV-15 has "retreated" from the happy little girl she was prior to falling victim to this group. (*See* Govt. Ex. A-8, A-15 Victim Information).

These crimes likewise have a lasting impact on the parents of these victims. Most blame themselves, while others mourn the loss of the daughter they knew. MV-27's father described how his daughter doesn't hug him in the morning any more. MV-4's parents explained how the crimes tore a hole in the relationship between MV-4 and her mother. That whole family feels "distraught, embarrassed, and shocked that something like this could have happened to our daughter and family." (*See* Govt. Ex. A-4, Victim Information, Filed Under Seal). The mother

of MV-8 and MV-15 wrote, "I worry about them every day."  As for the offenders, she wonders: "They have changed our lives forever, where we won't be the same.  Will they feel this for the rest of their lives?"

## Conclusion

The Government requests that the Court grant its motion for downward variance and impose a sentence of **40 years imprisonment** followed by 10 years of supervised release.

Respectfully submitted,

Matthew Schneider
United States Attorney

s/April N. Russo
April N. Russo
Kevin M. Mulcahy
Assistant United States Attorneys
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Phone:  (313) 226-9129
E-Mail: april.russo@usdoj.gov

s/Leslie Fisher
Leslie Fisher
Trial Attorney
Department of Justice
Child Exploitation &
Obscenity Section

Dated:  July 10, 2018

**Certificate of Service**

I hereby certify that on July 10, 2018, I electronically filed the

Government's Sentencing Memorandum for the United States under seal with the

Clerk of the Court of the Eastern District of Michigan.  I sent the memorandum

and attached exhibits via Fed-Ex to defense attorney Charles Hayes.

## Charles Hayes
charles@chjrlaw.com
*Attorney for Defendant*

s/April N. Russo
April N. Russo
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Phone:  (313) 226-9129
E-Mail: april.russo@usdoj.gov